We will now hear counsel in American Bird Conservancy v. Kempthorne. Good morning, Your Honors. May it please the Court, my name is Julia Lemenz. Thank you, I wondered how to pronounce that. Ah, yes, Lemenz. I represent the conservation group, the appellants in this case, and I have requested four minutes for a rebuttal. Your Honors, the lower court erred in holding that it did not have subject matter jurisdiction over the conservation group's challenge to the Fish and Wildlife Service's denial of a rulemaking petition because it mistakenly found that the agency discretion was unfettered. The decision misinterpreted the Administrative Procedures Act's extremely narrow exception to judicial review by extending it to the rulemaking context in this case. Can I ask you a question that keeps running through my mind as I go through all this? What does it matter now that they have listed the Red Knot as threatened but precluded? I mean, why do we have to get into the whole question of the emergency when they, WSF, WFS, has now come to, and have you appealed the latter? Your Honor, several questions in there. I'm sorry. That's fine, I'll pull them apart. And because environmental law, like other areas, is an alphabet soup of acronyms, I just call the Fish and Wildlife Service the service to make life easier. Okay. Your Honor, with response to the question regarding what difference does it make, and what difference does it make now, I need to go back just to clarify. The finding that the service has made with respect to the Red Knot, ultimately found, is that listing the Red Knot as endangered is warranted on the basis of the threats this species faces, but that it's precluded. Because it's only a number six and it's not a number one or two. Yes, Your Honor. And so as a result, that decision that the service ultimately reached first in 2006, is a decision that effectively provides no protection to this migratory shorebird that flies from Argentina to the Canadian Arctic and back. What does it mean if they find that it's threatened but precluded, that they won't do anything? It means, Your Honor, that if nothing else, the service will, each year, under the regulations, are required to review the finding. Now the Red Knot is a, so what we call this is a candidate species. It's a candidate for listing because things don't look so great for the Red Knot. The situation is fairly bleak. So it's a candidate for listing, but it is on a list that contains approximately, last I checked in December of 2008, 281 other species. And all of those species have been given a number, a priority number. And that is, if you will, it's pecking order about where it falls on the list and how imminent the risks are to the species. Sure. The service has a limited amount of money and probably a limited amount of people. And like all other government agencies, except those that deal with war, it's probably finding that it has less, that was my little dig, less than it needs, that it would like or that it needs. But given all that, that doesn't answer why we have to worry now about whether it was an emergency before. I know you'd like an opinion of this sort that says it's an appealable order, but I'm not sure why we should, and that's a difficult question, why we should do that. You're appealing the December letter. You're not appealing the CNOR. That's correct, Your Honor. And that was one of the other questions that Judge Slobiter asked, and I didn't get to it. I apologize for that. But so I think that, so that is correct. We did not appeal that decision. And the reason we did not appeal the decision, the CNOR, the Candidate Notice of Review finding, is that when the service denied the emergency listing petition in December of 2005, that effectively put an end to at least the inquiry as to whether or not that particular species should be listed or would be listed at that particular time. And so then approximately, well, from the date of the petition, which was late July and early August of 2005, the species effectively sat without any sort of, without even becoming a candidate. Now, are you saying, I think I missed what you said, are you saying that December 2005 effectively ended its status of being listed? If I did, Your Honor, I misspoke. What I mean to say is that with respect to the specific request by the conservation groups that the service list the red knot as an emergency, so list the species immediately or under the emergency listing provisions, that determination had been made. The service found in December of 2005 that emergency listing was not warranted. That's not really quite right. In the December 2005 letter, they say this is our initial review if conditions change and we later determine an emergency listing is not warranted at this time. But it doesn't give any indication to me that this was the final decision. It's not a final decision in other words. With all due respect, Your Honors, I believe that the decision with respect to whether or not to list the species as soon as reasonably possible using the tools that the Fish and Wildlife Service has available to it, the Fish and Wildlife Service said emergency listing is not warranted. And that's in the drain. But they did list it afterwards. I think that's what we're trying to address. Having listed it, why should we now go back? And you haven't appealed that listing and you can clearly appeal petition, I guess the word is, from that decision. Why should we now, as much as we may worry about the red knot, and I'd love to see a picture of it. I haven't found the book that shows it. Why should we? I have a picture. I'll show it to you. Okay, thank you. You looked it up. Now one of my intrepid law clerks. With respect to the questions, Your Honor, the first clarification is that the red knot is not listed. The red knot has been identified as a candidate for listing, but it has not been listed. So it is currently entitled to no protections under the Endangered Species Act. Could we look at it from this perspective? Let's assume that we were to decide that the district court was in error in finding that the APA doesn't provide for judicial review here. The case would go back to the district court, and what would you expect to be happening optimally? What relief could the district court give given what my colleagues have pointed out to be the subsequent activity of the agency? That's an excellent question, Your Honor. The answer to the question is that the basis for the challenge to the emergency listing denial is that the agency did not do the analysis that it was required to do according to the terms of the Endangered Species Act. You mean it considered things that weren't in the regs or the statute. That's exactly correct, Your Honor. And it seems to me that those things were perfectly reasonable to consider, i.e., that the communities along the way were protecting the eggs of the crab. But, you know, so I'm not sure I would say that it was arbitrary and capricious of the agency. They gave you more than you were entitled to be given. How can you complain about that? With all due respect, Your Honor, I believe that the concern is that, first, there is a mandatory duty on the part of the agency to use the best available commercial and scientific data in any decision that the agency makes with respect to listing a species. They should have done all that in December 2005. Yes, with respect to that finding, because the finding is made under Section ______. When they did really go into this, and I frankly find it very impressive, all of these studies that they did with the red knot that followed, the one in August that preceded the CNOR, and then the CNOR itself, the excruciating amount of detail into the red knot, you would have expected that to be in the December 2005 letter and then find that the species was in danger. Not exactly, Your Honor. And certainly, no disrespect to the service, they did a tremendous amount of work and considered information between December 2005 and September 2006 in the CNOR. But the obligation to use the best available commercial and scientific data applies across the board at all times. And so I'm not, I was not, I did not mean to suggest that the service should have seen into the future and had at its disposal all of those. But you mentioned earlier they have, on the CNOR, the candidates list, they have 240 some other species that they have to deal with. Isn't perhaps this why this has to be, is a totally discretionary decision? How much time are they going to devote? How much attention are they going to give? What types of things are they going to consider? And they're not graven in stone. In fact, they aren't, don't really appear anywhere. Well, Your Honor, with respect to, I don't agree that it's a totally discretionary decision. The Endangered Species Act mandates what factors the agency needs to consider for purposes of making a determination whether a species. And it doesn't give you a right, a statutory right to appeal that decision. Not to emergency list. Under the Endangered Species Act, Your Honor, the. You're trying to stay under the APA. That's right, but. I know, Judge Pollack's been trying to get his question out. He's sitting next to me and I can't hear it. So go ahead, Judge Pollack. If. It's hard to beat Marianne, go ahead. You might have gotten the feeling from some of the things that my colleagues have said that. Yes. If there were. If we were at the merits. There might be a sense that the. The declining to give an emergency designation had. Had some significant basis in the variety of protective activities that were recited. So it are pointed to and so forth. But if we put that aside. But given the fact that there was subsequent action in the candidacy determination. I have to get back to my question, which is. If we decide that you are entitled under the Administrative Procedure Act. To have a judicial review of the December letter. And we'll then decide. Then we will suppose that the district court on remand would find. Yes, indeed. There was a failure to examine all of the scientific evidence. Or that there were issues examined which didn't belong within the framework under the statute. What. What kind of relief. You win in the district court. Then what happens to. Is that a directive to the. To the agency to then find that there is an emergency. A current emergency. Whether there was then. Or is it simply a directive to the agency to go back. And recalculate whether there was an emergency at the time. Your Honor. My answer to your question is that. In fact, if. If we were to return to the district court. And the district court were to find that the agency. For purposes of this determination. Did in fact violate the terms of the endangered species. Failed to use best available commercial and scientific data. And also failed to. Or also considered. Considered things that. And with all due respect. I agree with you. With Judge Slover. That there are. All sorts of things. People have been. Quite good about trying to figure out. What is it that we can do to help. This. This endangered. What is effectively an endangered species. Especially people in the Delaware Bay area. But. But that is not. The service is not allowed. To say. We are not going to do something. For this. That's not Judge Pollack's question. Well. Your Honor. Keep the Judge Pollack's question. What should the district court do? Your Honor. If the district court agrees with every single assertion. That allegation that we make. And finds that the service. Did not do its job properly. And. And. And declares that the service violated the Endangered Species Act. The Fish and Wildlife Service would be asked. To review the decision. Without considering voluntary. And wholly speculative measures. And it's entirely possible. Your Honor. That the service could then find. That without looking at those factors. That it's not supposed to look at. That this species needs to be listed. Whether it be on an emergency basis. Or that it needs to be removed from this candidate list. Which does not entitle it to protection. And actually put through the standard listing process. So there is still relief that can be granted. Relief afforded to the appellants in this case. The district court would be directing the agency. To consider whether there is in 2008 an emergency. Or if the error was the one that was committed by the agency. In 2005. That seems to me to be a disconnect. I'm sorry for interrupting. Your Honor. I think that in response to another question that you asked. That I did not have an opportunity yet to answer. The concern is that until. That the CNOR finding in 2006. Relies on the same factors. That the appellants say. That service is not supposed to consider. And the concern is that. Is that now that the species has been listed as a candidate. And is subject. And this is responsive to the argument. Or to the question about whether or not. Why didn't we appeal the 2006 CNOR finding? And the fact remains. That if the service is committing the same errors. That in 2005. It made the same errors in 2006. Which would be our contention. Although that's not before this court. That we then enter this process. Where if the response from this court is. You should challenge the 2006 CNOR finding. We won't tell you what to do. But so I think there was a question raised about. Did you challenge it? And why did you not challenge it? I raised that. Right. And the theory here is that. Or the response is that. The reason why we didn't challenge that decision. Is that it's subject to the same flaws. That the 2005 decision is subject to. That would have been clearly appealable. And that would have been before us. Without question. Whereas the failure to list. To give the emergency finding. At most may not be. And therefore. Other than filing the little notice of appeal. You would have had it before us. In a posture where. We could have considered that. Which you claim you should have. Your Honor. With response. With respect to this. The issue of challenging the 2006 CNOR. The problem with challenging the 2006 CNOR. Is that the regulations require the service. To revisit that finding every year. And so that finding in fact. Has been revisited in 2007. And again in 2008. So you got what you wanted. Except that to the extent that the service. Continues to consider things that it's not supposed to consider. That you couldn't appeal. Well except Your Honor. That if I appeal. And it's frustrating. And I understand. And I'm. My response is that. Because of the nature of the 12 month review obligation. That the service has. If I challenge the 2000. In theory. If I challenge the 2006 CNOR. Or had I challenged the 2006 CNOR. By the time the case had been fully briefed. The service would have made a new finding in 2007. And the cases. Indicate that that finding is a new finding. And it supersedes. And would moot that case. And then we would have. Be in a position where we're challenging a 2007 finding. That goes to a different. That goes to issues as to what. What's final and reviewable. And whether this. Whether the candidate decree. Falls into the category of. Capable repetition. Capable of a repetition. But evading review. If. I'm. I'm now trying to put myself in the position. If you will. Of Judge Pisano. And I've been reversed by this panel. And I have a trade union interest in what happens. In the district court. I've been reversed by Judge Pollan. Twice. In the good old days. If. If. If you started to argue. Before Judge Pisano. That it was important. For him to review. What happened in 2005. Because the agency. Repeated the same litany. In 2006 and 2007. 2008. I think if I were the district judge. I would say. I'm not interested. In what happened after 2005. The court of appeals has put me to work on this case again. And what it means is. That I am to confine myself. To whether the agency behaved properly or not in 2005. And I. I ask you. In thinking about that. Consider whether the 2006 and 2007. Determinations. Had not repeated. The same. The same litany of reasons. And. You were. In the position of. Being in the district court. Challenging the 2005. Determination. I don't. I don't see that there's any. Law related. Importance. In the fact. That. In 2007. 2008. 2006. 2007. We've gotten a repetition of the same rationale. I don't see how that bears. As a matter of law. On your contention. That the 2005. Or. Determination should be reviewed. That's where my problem is. I'm. I'm. I'm open to the notion that. That an emergency. Determination. Is subject to judicial review. I say I'm open to that. I don't know whether my colleagues are or not. But that's. That central. Issue that you're raising. Seems to me one that. The question arises whether we should explore that at all. If it doesn't have any. Functional follow-up. In further phases of litigation. In answering this question. Please note. That your red light's been on for quite a while. And that's my fault. So. No. All of us. So. I guess. With respect to my. Opposing counsel. And the panel. If. If. We'd like. To answer his question. Okay. All right. In answer to your question. Your honor. It's our position that. That there. That there is relief. Effective relief. That can be afforded by. By. By Judge Bozzano. On a remand. If that's what this court. Elects to do. Because a declaration. That the agency. Is committing errors. And how it goes about. In the in the things that it considers. That that would be a valuable. Relief that could be afforded to the appellants in this case. And so that. Well that is not to say that. The agency may then go back. And do. Do the. Review. In accordance with Judge Bozzano's instructions. If. If. Speculating or hoping that the case would go that way. That. It's entirely possible that the service. Could then. Do it exactly the way Judge Bozzano instructs. And the way other judges. And other circuits. And other courts have. Have instructed the service to consider these factors. And not to consider other factors. And we may find ourselves. Ultimately in a situation. Where. We end up with the same. Situation. Thank you very much. Good morning. May it please the court. Charles Scott. On behalf of the Fish and Wildlife Service. I'd like to go directly to the question of mootness. Which. The test for which is the availability of effective relief. Which is the question Judge Pollack has been posing. In this case. The district court's ability to grant any effective relief. For the claims alleged by the conservation groups. Ended in September of 2006. With a candidate notice of review. And I'd like to explain specifically why. It's apparent that the panel has reviewed the record thoroughly. But. I'd like to drag you through it once more. There are two claims brought against the December 2005 letter. The first is. That it was improper. It was arbitrary and capricious. To rely on the fact that New Jersey and Delaware. Had proposed. But not adopted moratoria on horseshoe crab harvesting. That claim is on pages 48 to 49. And the letter referring to that is page 153. If you look at the candidate notice of review. And the status assessment form upon which it was based. Pages 193, 285 and 299. You will see that the service in finding no emergency. And that listing was warranted but precluded. Relied on the fact that New Jersey in May of 2006. Had adopted a two year moratorium on horseshoe crab harvesting. And the Atlantic States Marine Fisheries Commission. Had adopted restrictions that included a partial moratorium. I'm sorry. How does that get us to the reviewability. I thought you were addressing the reviewability. Of the declination of an emergency listing. That's correct your honor. The answer is that. That document in September of 2006. Not only superseded the December 2005 letter. But also cured the alleged defect. So that any relief as to the alleged defect. In the December 2005 letter. There wasn't any effective relief that the district court could grant. But that doesn't really answer the question. That's in this case. As to whether it's appealable at all. I mean what you're saying is that. Because they. They gave some kind of relief. Or some kind of result in September 2006. That takes care of it. But a more basic question. And the one that they raised. Which may or may not be new. Is that they're entitled to. Review of the failure. To give an emergency listing. Which would have given some protection. I think it's 260 days. Or 280 days. 240 days. I mean that's what they are. The groups are arguing. And the fact. That there was a September 2006 letter. Which may have mooted the fact. In this case. Doesn't really answer the question of reviewability. At all. You mean reviewability in general. Yeah. Let me. I think they want. I mean I think she just finally. She made it very clear. That what they want from us. So that they can show it to all the district courts throughout the country. Is something that says. It's a justiciable. It's a reviewable decision. They are not entitled to that in this case. Because they have lost their stake in the controversy. Because the agency. Has given them through all the relief that the district court. Could have been empowered. To grant them. You're saying it's moot. I'm saying it's moot. But there are other issues. We have. We've been discussing mootness. But there is also the December letter was a non-final determination. And. The argument is it was vested in the agency's discretion. And the third argument is in any event. It's moot. Your Honor. We have provided. Three jurisdictional grounds on which the dismissal by the district court. May be granted. It's well established in this circuit that you may. Affirm dismissal on any basis in the record. On any of these three jurisdictional grounds. If you're saying that mootness is a jurisdiction. Well you may certainly affirm on the basis of mootness. Yes. It's yes. Yes or no. Yes. An article. It's an article three. Yes. You're calling it jurisdictional. Well I am calling it a requirement of article three. And certainly a threshold requirement. But for example. Requirement before jurisdiction. Can we determine that it's moot if we don't have jurisdiction. No. The Supreme Court has said that there is no jurisdictional hierarchy. So you can affirm on any basis that any of the three bases we've provided. Let me read to you. Something from the endangered species petition management guidance. July of 1996. Which says. Even if private individuals. Lack a statutory right. To petition for emergency rulemaking. Well they don't say that. I'm sorry. The internal guidance documents say. That FWS always. I'm quoting now. Always considers the need for an emergency rule. When listing species. So petitions that specify such actions. Are considered in the context of the listing action. And any decisions are reviewable under APA standards. Now that wasn't in the briefs. My looker. Judge Pollack. Look further. And that's from the endangered species petition management guidance. What does that. Doesn't that mean. That it is reviewable. Your Honor. At best. That means that it is reviewable in the context of a finding. Issued by the service. In the context of a 12 month finding. Again the conservation groups here have elected. Not to amend their complaint to challenge the finding. They did amend their complaint. In October of 2006 to dismiss a claim. For failure to make a 90 day fine. They've made that choice. Yeah I think there were two things that they had. Two or three things that they knocked off. I think that's right. Your Honor. What I would say to go further. I would point you to the next sentence in that paragraph. Which is says. Although emergency listing or concurrent designation of critical habitat. Are frequently requested by petitioners. They are not subject to the ESA's petition provisions. When relevant. The service's obligations and prerogatives for these should be pointed out. What this language at best stands for. Is that you do not have a right independently to seek emergency listing. You have the right to file a petition. And you have the right to seek review of that petition in court. There isn't a right simply to seek emergency. An emergency listing because. First of all. It's not final agency action. Second. There are no substantive or procedural criteria that structure the service's decision. Well I'm not sure about the latter. But go ahead. Why didn't you. When you moved to dismiss. Why didn't you make the claim that this was not final agency action. You say in your brief that you did not have the opportunity to make the argument. But why didn't you have the opportunity to make that argument. Your Honor. I honestly. I don't know. When I say that we didn't have the opportunity. You could charitably read that to me. And because the district court dismissed it anyway. We didn't have the opportunity to make that argument. I would point out that the district court on page 18 of its opinion noted. That this was a threshold jurisdictional issue. That it would have had to consider before it got to the merits. The court. If it goes to the court's jurisdiction. And one can certainly say it does. The court would have an obligation to raise it on its own. But I would think that you'd be in there screaming. No final agency action. Based on the December letter. I think our advocacy at trial level was excellent. But I was not involved in it. And I don't know the answer to that question. Obviously our advocacy was excellent given the result. But it was. It's a jurisdictional argument that we can raise at any time in the proceedings. And that the court has the obligation to consider. So I don't know why we didn't raise it. I hate to say it doesn't matter. But it doesn't. Because you may still and should consider it. I'd just like to quickly point out. That the final agency action requirement is pretty obviously not met here. By the very terms first of the letter. Saying this is an initial review. We don't find that listing is warranted at this time on an emergency basis. And you have that language in the letter. But then you can also compare to nine months later. Page 299 to 300. And page 193. You have the definitive conclusive finding in the petition. Where it is concluded that there is not an emergency. Isn't it significant that your agency chose to respond to the petition on emergency listing? I mean I guess they didn't have to at all. If you're right that it's not reviewable. So what should we do with the fact that you chose to respond? Well, subject matter jurisdiction cannot be created by any conduct of the parties. That's pretty clear from Supreme Court precedent. So principles of consent, estoppel or waiver are insufficient to create subject matter jurisdiction. It's either there or it isn't. So the fact that we responded by letter, it's a courtesy. But it is certainly a tentative finding. As shown not only by the language. But by the detail and conclusiveness of the subsequent finding in September. Whatever would an agency decision not to engage in rulemaking constitute final agency action? I would, I don't know because this is not a decision not to engage in rulemaking. Well wasn't that the decision, I mean on the emergency request or petition, I'm not using the right word. Wasn't that what it did? Isn't that what they're asking us to review? And isn't it rulemaking when you list something as an emergency? Because there is no statutory right under the ESA to petition for issuance of an emergency listing. And in fact I would reiterate that the language of the ESA, Section 1533B-7, that contains the emergency authority says Section 553 of the APA does not apply to exercise of this authority. The right to petition for agency action comes from Section 553E of the APA. So this is simply not a denial of rulemaking. We agree, as the Court has pointed out several times, the 12-month finding is a final agency action that is reviewable. There has been a conscious decision by the conservation groups who are the masters of their case not to challenge that 12-month finding. I would like to get back to mootness just quickly. I'm sorry, Judge Pollack. Don't you think that the agency is under a statutory obligation to utilize its emergency authority? The language that you've read in Paragraph 7 isn't the entirety, I think, of what is said about emergency determinations. We're told in 3 C, Roman 3, that the Secretary shall implement a system to monitor effectively the status of all species with respect to which a finding is made under subparagraph B-3, and shall make prompt use of the authority under Paragraph 7 to prevent a significant risk to the well-being of any such species. There, of course, being the emergency authority. Judge Pollack, the use of the word shall in that section is inapplicable to this case because that section is inapplicable here. Section 1533 B-3 C-3 says, having once made a finding that listing a species as endangered or threatened is warranted but precluded, the Secretary shall monitor its status and shall make prompt use of its emergency listing authority. Mr. Scott, my concern was your characterization of the sending of the 2005 letter as a courtesy. I suggest to you that it's a little more than a courtesy when you're directed by Congress to make prompt use of certain authority. Had the red knot already been listed as warranted but precluded, that section would be applicable and we would be in a different case, I agree. Since it was not applicable to the red knot in 2005, since the red knot was not identified as warranted but precluded as a candidate species until September of 2006, the action at issue in this case does not implicate that statutory subsection. Now, the warranted but precluded conclusion requires you to monitor, does it not? Yes. What other, if any, statutory or regulatory responsibilities do you have as a result of the warranted but precluded conclusion? I think B3C1 says that you must, once you've made a finding that a species is warranted but precluded, it's treated as if you have made a positive 90-day finding, and therefore, within 12 months, you have an obligation to make a 12-month finding. The effect is that there is a candidate notice of review that is periodically issued. That was not the case here because the red knot wasn't on it yet. Opposing counsel cites in their last page of their reply brief an unreported Ninth Circuit decision that says, this case is not moot. When you challenge the 1996 candidate notice of review, for example, and then you say it's moot based on the 1997 candidate notice of review, well, every year there's going to be a candidate notice of review, so this is capable of repetition yet evading review. What I would remind the Court of here is that in December of 2005, the red knot was not a warranted but precluded species, so it was not in the realm of having a 12-month finding every year. In September of 2006, the effect of that candidate notice of review was to fundamentally alter the red knot's position vis-à-vis the statute, as Judge Pollack has pointed out by quoting the subsection. After September of 2006, the red knot was in a totally different position than it was in December of 2005. If you look at the claims here, the claims ultimately are you considered improper information and incomplete information. Again, I would submit that a review of the record suggests that in September of 2006, those claims were cured because there was complete information and the only conservation measures considered were actually adopted, so that injunctive relief to reconsider or declaratory relief that there had been a violation could not constitute effective relief and there could not be a live controversy under Article III. And to the extent that the conservation groups sought an injunction directing the agency to list the red knot on an emergency basis, under Supreme Court law, that's simply not relief that a district court may grant under the APA. The district court may not engage in de novo rulemaking on the agency's behalf. It may only remand for further explanation or reconsideration. And I think unless there are questions, I'll probably stop. No, that's fine. Thank you very much. Thank you. Yes. I hope you don't think you're going to get to all of that in four minutes. No. It's my safety blanket, Your Honor. Ms. Schroeder, we're running out of time. I appreciate the court's courtesies in allowing me rebuttal time. I know you extended my time in the opening. Well, I'm going to keep you to this one because we've got two more cases. Yes, Your Honor. Just a few quick points. I think I note with interest that my opponent mentioned what's in the record and that he believes a review of the record would suggest that everything's fine here with respect to the red knot. And I think that that actually suggests to you that the decision the agency made is reviewable. The agency did make a final decision. There is an administrative record, and it's been filed with Judge Pisano. She didn't appeal the final decision. The decision in the CNOR was never appealed. Your Honor, it's our position that the agency's decision in 2005 when it sent the letter that said, emergency listing is not warranted, the letter does not say emergency listing. That's what we went to. Right. So to the extent that that's the fundamental position there, that that's the decision that was appealed, and that's a decision that the groups say is defective and needs to be reviewed with instructions from Judge Pisano for the agency to engage in. You're just repeating what you said before. To the extent that we didn't have an opportunity to discuss the fact that there is law to apply here, I think that Judge Pollack hit upon one feature. But in addition, I would say with respect to emergency listing, which is an authority that the service has, the service is also mandated under 1531 of the Act, which is the overarching mandate, which is quite similar to the overarching mandate that was in the profit case, that all federal departments and agencies shall use their authorities to protect and conserve species. So to the extent that there is an attempt to try and read Section 1533B7, the emergency listing provision, out of the broader context, which is the Endangered Species Act, I would suggest that that's an error. In response to something that perhaps needs to be clarified, there is a decision whether or not to list on an emergency basis is, in fact, a rulemaking. The only way an agency can actually list a species under the Endangered Species Act is by rule. So to the extent that the conservation groups asked for an emergency rulemaking listing and it was denied, that is the action that's being challenged. And as recently as last year in the Massachusetts v. EPA case, the United States Supreme Court again reiterated that denials of rulemaking petitions are judicially reviewable. So unless your Honors have any other questions, I will thank you for your time, Your Honors. We'll take a matter under advisement.